84

UNITED STATES, Appellee,

v.

Charles D. GOODMAN, Private First
Class, U.S. Army, Appellant.

No. 65,310.
CM 8900144.

U.S. Court of Military Appeals.

Argued April 25, 1991.

Decided Sept. 4, 1991.

For Appellant: *Captain Michael Huber* (argued); *Lieutenant Colonel Russell S. Estey, Captain Pamela J. Dominisse, Captain Timothy P. Riley* (on brief).

For Appellee: *Captain Timothy W. Lucas* (argued); *Colonel Alfred F. Arquilla* and *Lieutenant Colonel Daniel J. Dell'Orto* (on brief).

*Opinion of the Court*

COX, Judge:

Contrary to his pleas, appellant was convicted of willfully burning an inhabited troop billet and making three false sworn statements. *See,* Arts. 126 and 134, Uniform Code of Military Justice, 10 USC §§ 926 and 934, respectively. The Court of Military Review affirmed the findings and sentence * in an unpublished opinion on April 30, 1990.

---

* A general court-martial comprised of officer and enlisted members sentenced appellant to a dishonorable discharge, confinement for 7 years, total forfeitures, and reduction in grade to E–1. The adjudged sentence was approved by the convening authority.

On appeal to this Court, appellant claims that two errors were made in the sentencing portion of his trial. First, he contends that the military judge erred by admitting, over defense objection, the testimony of appellant's direct-line supervisor regarding appellant's lack of potential for continued service in the Army. *See United States v. Ohrt*, 28 MJ 301 (CMA 1989). Second, appellant attacks the closing argument of his own trial defense counsel. He asserts that the confusing and contradictory nature of the argument prejudiced him as to the confinement portion of his sentence.

We agree that error occurred but conclude that, under the facts and circumstances of this case, there was no error which "materially prejudices the substantial rights of the accused." Art. 59(a), UCMJ, 10 USC § 859(a).

## I

During the presentencing portion of the trial, appellant's direct-line supervisor, Staff Sergeant Lorraine Mitchell, testified about her knowledge of appellant and his duty performance. Trial counsel asked Sergeant Mitchell: "Do you want ... [appellant] back in your unit?"; and, "Do you think he has a place in the Army?" Mitchell responded negatively to both questions. Appellant's trial defense counsel immediately objected to the questions and Sergeant Mitchell's testimony on the grounds that they did not address appellant's potential for rehabilitation. The military judge overruled defense counsel's objection.

■ Trial counsel's questions and Sergeant Mitchell's testimony exceeded the bounds of RCM 1001(b)(5), Manual for Courts–Martial, United States, 1984, and the manner in which this Court has addressed such inquiries under *United States v. Ohrt, supra,* and *United States v. Aurich,* 31 MJ 95 (CMA 1990). The questions and testimony plainly address something other than rehabilitative potential; their "preemptive" use is improper. *United States v. Wilson,* 31 MJ 91, 94 (CMA 1990). Accordingly, the testimony of Sergeant Mitchell was inadmissible. *United States*

*v. Ohrt* and *United States v. Aurich,* both *supra.*

■ It seems self-evident that most people would have qualms about having someone in their unit or service who had torched troop billets. Thus, Mitchell's opinion was hardly surprising, and it is rarely prejudicial for someone to state the obvious. Moreover, admission of the testimony does not seem prejudicial to appellant for several other reasons. First, the members of the court-martial had before them appellant's service record, which demonstrated he had been a good soldier except for the charged offenses. Second, although the form of the two questions was objectionable, Mitchell's testimony lessens in impact when compared with other testimony presented. The panel also heard from appellant's first sergeant, First Sergeant Boehm, who testified as to appellant's potential for rehabilitation, as did Staff Sergeant Martinez. Furthermore, Staff Sergeant Tan testified that appellant was one of his best workers. However, the officer in charge of appellant's duty section, Chief Warrant Officer Douglas, testified that appellant lacked rehabilitative potential, as did the Noncommissioned Officer in Charge of appellant's duty section, Sergeant First Class Johnson. Accordingly, persons who observed appellant on a daily basis possessed greater knowledge of him and logically wielded more influential opinions than that of Sergeant Mitchell when presenting their beliefs about appellant's potential for rehabilitation before the court members. Thus, in our view, the members were not likely to be prejudicially influenced by the two improper questions asked of Sergeant Mitchell or by his answers.

More importantly, one cannot lose sight of the fact that the offenses of which appellant was convicted were extremely serious, and it is highly unlikely that any servicemember would avoid a punitive discharge under the circumstances of this case. It cannot be forgotten that appellant was convicted of willfully burning an inhabited troop barracks and for making false statements under oath concerning the

fire, for which he could have been sentenced to 29 years of confinement. All these reasons lead us to conclude that admission of the answers to the two questions did not result in prejudicial error. Art. 59(a); *United States v. Wilson, supra; United States v. Horner,* 22 MJ 294 (CMA 1986).

## II

■ During argument on sentence, defense counsel stated:

And, members of the court, seven or eight or nine years of punishment is not minor punishment. He is 22 years old, nine years of punishment of confinement would have him not released until he was in the 30's, and his son about to embark ... on his teens. Is that really necessary in this case? We submit not. We submit that six or seven or eight or nine years might be, in fact, reasonable and just punishment. Please think deeply and hard when you're assessing your sentence, and try to send a just message. Thank you.

The military judge considered this argument potentially harmful to the accused and attempted to have defense counsel clarify his position. The defense counsel then made the following argument:

You have the job of deciding what's an appropriate sentence, and I hope that you understand that the thrust of the last part of my argument is that twenty-nine years is, of course, something that the defense submits is beyond a realm of reason; it's not called for. The maximum punishment should be reserved for the most severe cases, for the soldiers with the most severe and bad track records. And, of course, Private Goodman has a clean record. He may be an indifferent performer, but he has a clean record going into this incident. In trying to address the Government's comment that minor punishment's about seven or eight or nine years—well-the point I was trying to get across is, of course, that seven or eight or nine years of punishment is not minor punishment for any-

body, and in his family situation, and in his age, it's certainly not minor punishment for him.

We expect confinement will be adjudged by this court, but the point I'm trying to get across is that the realist or plausible sentence in this case—don't start at the twenty-nine level—but, more likely, down at the six, or seven, or eight year level. You're the person with that responsibility and, of course, believe me, neither myself nor my co-counsel are asking that you send Private Goodman to jail for six years. Thank you.

The military judge expressed his continuing concern about the propriety of the argument as follows:

MJ: —as I understood your argument when I allowed you to re-argue that, the maximum punishment as argued by the prosecutor and which they will be instructed on—is twenty-nine years' confinement. Your—your argument to the court was that the maximum that they should start thinking about is six or seven or eight years—

\* \* \*

MJ: —it was an argument that—that the defense feels that the maximum to be considered should not start at twenty-nine years—

ADC: Um-hmm.

MJ: —in consideration, but should be considerably less—is that—

ADC: Yes—

MJ: —that a fair comment on your argument?

ADC: —yes—that's correct, Your Honor —and, frankly, this is a case—although my lead counsel, frankly, has—had a suggestion—but this is a case where I'm very concerned about the realism of asking for something like two years or three years, but if—if after my—my attempt to clear the air I further mudded—mudded the air—

\* \* \*

MJ: —this is a unique situation—but, in the interest of justice, I want to ensure that the defense's argument is properly

understood, and that there will be no prejudicial effect by the defense's argument. That's my responsibility.

TC: Yes, Your Honor.

MJ: In order to accomplish that I'm taking—I'm going outside the normal procedures to do that.

TC: All right, Your Honor.

MJ: We—are you going to be prepared to argue, Captain Luster?

DC: Yes, sir.

\*     \*     \*

MJ: Members of the court, I am going to allow the defense an additional argument, and Captain Luster will make an additional argument.

DC: Members of the panel, we'd like to basically clarify our position in this case on an appropriate sentence. You've seen all the evidence brought in; you know about the evidence, about the fire; and you know where the fire occurred relative in that billets, and you know the accused's actions after that fire, and that he did ... try to mitigate the problems of that fire.

The defense submits that a sentence of six to seven years of confinement is by far—is not a minor sentence—it's not for a minor offense. Under the circumstances of this case, we submit that six or seven years in confinement would be extremely severe. Thank you.

The dissenting judge, Senior Judge Foreman, of the Court of Military Review, labels defense counsel's argument as "contradictory and confusing." Unpub. op. at 4. Judge Smith, writing for the majority of the panel, described it as "not a model to be emulated." *Id.* at 3. The question for us to consider, however, is not whether the argument is good or bad; instead, it is: Did defense counsel's performance in the courtroom fall so far beneath the standard normally expected of advocates as to constitute ineffective assistance of counsel? If it did, is there a reasonable probability that the outcome of the trial was affected by counsel's argument. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Scott,* 24 MJ 186 (CMA 1987).

We are loath to say that the argument was either improper or fell beneath the standards expected of trial advocates. This was a case which clearly required damage control by counsel. An advocate who is forthright, honest, sincere, and *realistic* often prevails over an advocate who, like the ostrich, sticks his head into the sand to avoid being detected. We need not resolve the merits or demerits of the defense tactic, however, because we do not find that the second prong of the *Strickland* analysis has been met. We agree with these comments by the majority of the Court of Military Review:

We find no reasonable probability that the argument was misunderstood by the court members or that the outcome of the proceedings would have been different absent the alleged breach. *See Strickland v. Washington*, 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984).

Unpub. op. at 3.

The decision of the United States Army Court of Military Review is affirmed.

Senior Judge EVERETT concurs.

SULLIVAN, Chief Judge (concurring):

I have expressed my views on Issue I in *United States v. Aurich*, 31 MJ 95, 98 (CMA 1990) (Sullivan, J., concurring in part and dissenting in part). Nevertheless, accepting my Brothers' conclusion of error, I agree it was harmless. Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a).