UNITED STATES, Appellee

v.

Eric C. HAMPTON, Private
U.S. Army, Appellant.

No. 93–0948.
CMR No. 9201834.

U.S. Court of Military Appeals.

Argued April 20, 1994.

Decided Sept. 22, 1994.

Appellant: *Captain Teresa L. Norris* (argued); *Colonel Stephen D. Smith, Lieutenant Colonel James H. Weise, Captain Victor A. Tall* (on brief); *Colonel Malcolm H. Squires, Jr.* and *Major Fran W. Walterhouse.*

Appellee: *Major James L. Pohl* (argued); *Colonel Dayton M. Cramer, Major Joseph C. Swetnam, Captain Glenn L. Kirschner* (on brief); *Major Timothy W. Lucas* and *Captain Gregory T. Baldwin.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

Appellant was tried by a special court-martial composed of officer and enlisted members at Fort Campbell, Kentucky, on August 17, 1992. Pursuant to his pleas, he was found guilty of receiving stolen property (a fellow soldier's pistol), in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a bad-conduct discharge, confinement and forfei-

ture of $523.00 pay per month for 6 months, and reduction to the lowest enlisted grade. On October 2, 1992, the convening authority approved the sentence. On March 8, 1993, the Court of Military Review in an unpublished opinion affirmed the findings and the sentence, except for confinement in excess of 3 months, which it disapproved to conform the sentence to a pretrial agreement.

■■■ This Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED BY ALLOWING TRIAL COUNSEL TO IMPROPERLY ARGUE THAT THE INFERENCE TO BE DRAWN FROM A WITNESS' STATING THAT APPELLANT HAS NO REHABILITATIVE POTENTIAL MEANS THAT HE "DOESN'T DESERVE TO REMAIN IN THE ARMY."

We hold that the military judge erred by permitting trial counsel's incorrect assertion in his sentencing argument concerning a government witness' sentencing testimony. *See United States v. Kropf,* 39 MJ 107 (CMA 1994), and *United States v. Ohrt,* 28 MJ 301 (CMA 1989). Nevertheless, in light of the evidence actually introduced in this case, we conclude that the sentence imposed was not substantially affected by this error. Art. 59(a), UCMJ, 10 USC § 859(a); *see United States v. Reid,* 32 MJ 146 (CMA 1991); *see generally Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

A stipulation of testimony was admitted at trial concerning the expected testimony of appellant's squad leader, Sergeant Kurt Nelson. The text states the following:

I am presently on a training mission in Canada. I have known the accused for about three years. The accused and I have served in the same platoon for most of this period. Before our company was deployed to Southwest Asia, I believe that the accused was a fair soldier. I do not remember any problems that our leadership had with him. He did what he was told to do. His conduct and performance was about the same while in Saudi Arabia and Iraq.

However, upon our return to Fort Campbell, his performance worsened. He became a leadership challenge. After he discovered that he was going to get in trouble for pawning Private Gerring's Beretta, the quality of his performance fell to an all time low. He has absolutely no motivation and requires constant supervision. He requires a great deal of my time as his immediate supervisor (his squad leader).

The accused's crime distracted from the cohesion of my squad. It damaged the trust that my soldiers must have in one another. *In my opinion, the accused does not have any rehabilitative potential.*

(Emphasis added.)

During the Government's sentencing argument, the following was said by trial counsel:

Maybe the most telling testimony, the most telling evidence about what kind of soldier the accused really is, was Staff Sergeant Singleton, the testimony—expected testimony that Captain Gross [defense counsel] read to you. Staff Sergeant Singleton and the accused were roommates together in 1989, as specialists. Now PV2, Hampton stands before you today convicted; Staff Sergeant Singleton obviously has gone on with his career, a successful career. *Further—Expected testimony by Corporal Rambin [sic], just doesn't—he's had daily contact with him, squad leader, doesn't have rehabilitative potential, doesn't deserve to remain in the Army.*

DC: Objection, Your Honor, that wasn't the testimony.

MJ: Counsel, from my recollection was, that there a line about rehabilitative potential [sic].

DC: Yes, sir, but that wasn't for Corporal Rambin [sic] to say he doesn't deserve to stay in the Army [sic].

MJ: I believe that's within the balance of fair comments. Your objection is overruled.

The military judge then instructed the members on this matter:

MJ: Before Captain Gross begins his closing argument, I want to advise the

court that Captain Gross was correct in what he just said. That the evidence before you did not come from Corporal Rambin concerning the lack of rehabilitative potential. I apologize, Captain Gross, the evidence did come from the Stipulation of Expected Testimony of Sergeant Nelson. The trial counsel argued that the one witness had said these things, and drew an inference from that. I advise the court that the fact some witness said it, and that's a proper inference to be drawn from it is admissible evidence. But I want to make sure that what I said in overruling the defense counsel's objection has not confused you. That expected testimony came from Sergeant Nelson, as opposed to Corporal Rambin.

Does everybody understand my correction?

[Affirmative response from all panel members.]

MJ: Thank you. You may proceed, Captain Gross.

— — —

■ Trial counsel may zealously represent the Government by offering forceful arguments during sentencing and urging that an appropriate, specific, and lawful sentence be imposed. *United States v. Kropf,* 39 MJ 107 (CMA 1994); RCM 1001(g), Manual for Courts–Martial, United States, 1984.[1] These arguments, however, "must be based on a fair reading of the record." *United States v. Kropf,* 39 MJ at 108. *See* RCM 919(b) ("Arguments may properly include *reasonable* comment on the evidence in the case, including inferences to be drawn therefrom...." (Emphasis added.)). *See also* RCM 919(b), Discussion ("In argument counsel may treat the testimony of witnesses as conclusively establishing the facts related by witnesses.").

In this case, however, trial counsel, at least arguably, misquoted appellant's squad leader when he implied in his sentencing argument that this witness said appellant "doesn't deserve to remain in the Army." An incorrect restatement of a prosecution witness' testimony is error. *See United States v. Davis,* 974 F.2d 182, 191 (D.C.Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1434, 122 L.Ed.2d 801 (1993). *See also In re Sawyer,* 360 U.S. 622, 625, 79 S.Ct. 1376, 1377, 3 L.Ed.2d 1473 (1959) (plurality opinion), *citing* Canon 22, ABA Canons of Professional Ethics, which says: "It is not candid or fair for the lawyer knowingly to misquote ... testimony of a witness...." *See* Rule 3.3(a)(1), ABA Model Rules of Professional Conduct (1989).

■ Assuming trial counsel was only arguing facts which could be reasonably inferred from this witness' testimony, we still find error. A command witness may render an opinion as to a servicemember's rehabilitative potential based upon the latter's service performance and character. RCM 1001(b)(5). However, under the decision of this court in *United States v. Ohrt, supra,* and its progeny, he may not "express an opinion whether" that servicemember "should be punitively discharged" or provide "euphemisms" to this end. *United States v. Ohrt,* 28 MJ at 304–05. This Court's holdings are premised on the fact that a court-martial has only punitive discharges "available to it." 28 MJ at 305. Consequently, an inferred assertion that appellant "doesn't deserve to remain in the Army" can be rationally construed as an impermissible recommendation for a punitive discharge. *United States v. Wilson,* 31 MJ 91, 94 (CMA 1990); *United States v. Kirk,* 31 MJ 84, 89 (CMA 1990).

1. This Rule states:

(g) *Argument.* After introduction of matters relating to sentence under this rule, counsel for the prosecution and defense may argue for an appropriate sentence. Trial counsel may not in argument purport to speak for the convening authority or any higher authority, or refer to the views of such authorities or any policy directive relative to punishment or to any punishment or quantum of punishment greater than that court-martial may adjudge. Trial counsel may, however, recommend a specific lawful sentence and may also refer to generally accepted sentencing philosophies, including rehabilitation of the accused, general deterrence, specific deterrence of misconduct by the accused, and social retribution. Failure to object to improper argument before the military judge begins to instruct the members on sentencing shall constitute waiver of the objection.

The evidence introduced at this trial, however, strongly suggests this error was harmless.[2] Art. 59(a). The record shows that appellant received property (a 9-millimeter Beretta pistol) which he knew was stolen from the barracks room of a fellow soldier and which he knew belonged to his friend in his squad. Moreover, he pawned this gun, "spen[ding] his share of the loot on beer, food, and 'partying.'" It is well established that barracks thievery is particularly destructive of good order and discipline in the military because it erodes the trust which soldiers who live and work closely together must have in one another. *United States v. Fowle*, 7 USCMA 349, 352, 22 CMR 139, 142 (1956); *United States v. Littrice*, 3 USCMA 487, 494, 13 CMR 43, 50 (1953); *United States v. Krull*, 3 USCMA 129, 133, 11 CMR 129, 133 (1953). In addition, we also note that appellant's most recent work performance was shown to be poor, and he required constant supervision. *See generally United States v. Goodman*, 33 MJ 84, 85 (CMA 1991).

The record also demonstrated appellant's repeated willingness to break military law. *Cf. United States v. Oquendo*, 35 MJ 24 (CMA 1992). Two months prior to receiving the stolen pistol, he absented himself from his unit without authority for 5 days (Art. 86, UCMJ, 10 USC § 886), for which he received punishment from his commander under Article 15, UCMJ, 10 USC § 815. *See United States v. Robinson*, 25 MJ 43, 44 (CMA 1987). In light of the above and the lethal nature of the stolen property, we are confident that the sentence imposed "was not substantially swayed" by trial counsel's inaccurate euphemism. *Kotteakos v. United States*, 328 U.S. at 765, 66 S.Ct. at 1248, 90 L.Ed. 1557; *United States v. Kropf*, 39 MJ at 110 (Sullivan, C.J., concurring), citing an additional weapons conviction as a factor showing no prejudice.

The decision of the United States Army Court of Military Review is affirmed.

Judges COX, GIERKE, and WISS concur.

CRAWFORD, Judge (concurring in the result):

Factually, this is a very simple case. The prosecution offered a stipulation, with the express consent of the accused and with a statement of no objection by defense counsel, of the expected testimony of appellant's squad leader, Sergeant Kurt Nelson, that "the accused does not have any rehabilitative potential." Trial counsel argued from this testimony, while erroneously referring to the testimony of Corporal Rambin, that "he's had daily contact with him, squad leader, [and appellant] doesn't have rehabilitative potential, doesn't deserve to remain in the Army."

Defense counsel objected that trial counsel's argument that the accused "doesn't deserve to remain in the Army" was not "the testimony" and that it was improper for a witness "to say he doesn't deserve to stay in the Army." The judge corrected trial counsel as to the source of the testimony about "lack of rehabilitative potential" and pointed out that trial counsel "drew an inference from" this testimony "and that's a proper inference to be drawn from it."

In support of this view I note that we even recognized in *United States v. Ohrt*, 28 MJ 301 (1989), that testimony as to "rehabilitative potential" is another means of "express[ing] an opinion whether an accused should be punitively discharged." *Id.* at 304–05. *See also United States v. Cherry*, 31 MJ 1, 5 (CMA 1990). Thus *Ohrt* recognizes this inference. *Ohrt* says that the opinion about rehabilitative potential must be solely "personalized and based upon the accused's character and potential." 28 MJ at 307. That was precisely the basis for Sergeant Nelson's opinion. As far as I am concerned, once the defense agreed to stipulate that appellant had no rehabilitative potential, they cannot turn right around and object to what this Court has held is a reasonable inference from that language.

Thus, based on our case law, trial counsel's argument was a reasonable inference from

---

**2.** The military judge's instruction, which is set out in the text of this opinion, 40 MJ at 458–59, did not cure these errors. *See United States v. Cherry*, 31 MJ 1, 5–6 (CMA 1990).

the stipulated testimony of appellant's squad leader. Accordingly, I would hold that there was no error and affirm the decision of the court below.