## UNITED STATES
### v.
**Dorsey M. USRY, Jr., 256 11 9169, Private First Class (E–2), U. S. Marine Corps.**

### NCM 79 1894.

U. S. Navy Court of Military Review.

Sentence Adjudged 2 Aug. 1979.

Decided 23 May 1980.

Before GREGORY, Senior Judge, and EDWARDS and GLADIS, JJ.

EDWARDS, Judge:

█ This case originally came before us without specific assignment of error. We have asked appellate counsel for, and received, briefs on the issue of appropriateness of the sentence. In carrying out our statutory duties, we must be convinced that the findings and sentence are correct in law and fact. We have no quarrel with our brother in his concurring/dissenting opinion that such duty requires us not to approve any sentence which, in view of the entire record, we conclude is not fair and just.

Article 66c, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(c). In the instant case, we find the sentence to be fair and just.

At his general court-martial convened on 2 August 1979, the appellant on his pleas was found guilty of an unauthorized absence of approximately 56 days and larceny of another Marine's automobile, in violation of Articles 86 and 121, UCMJ, 10 U.S.C. §§ 886 and 921. He was sentenced to confinement at hard labor for 2 years, to forfeit all pay and allowances, to be reduced to pay grade E–1, and to be discharged from the U. S. Marine Corps with a dishonorable discharge. The sentence as adjudged was approved on review below.

Prior to sentencing, evidence was introduced to show that Private First Class Usry was 19 years of age, had been in the Marine Corps for just short of 2 years, had previously received nonjudicial punishment for possessing a trace amount of marijuana, and had his unauthorized absence terminated by apprehension in Lexington, Georgia. The owner of the stolen automobile testified in substance that he knew the accused; that he was from the same battery as the accused; that in early March of 1979 he had departed Camp Lejeune, North Carolina, for an operation at Fort Bragg, North Carolina, returning on 30 March 1979; that he had left his 1976 Nova automobile in the parking lot behind his barracks; that he had bought the automobile in November 1978 for $2600.00; that when he left for Fort Bragg the automobile was in good condition with no body damage; that he was married and required a car to get to work; that he did not get the car back until 15 June 1979 and it was necessary for him to fly down to Lexington, Georgia, to get it from the sheriff; and that the car was substantially in the same condition as when it was taken.

The appellant introduced into evidence documents showing that he had been a Private First Class since March of 1978; that he had fired low marksman in 1977 and 1978 with the M–16 rifle and had familiarization fired the .45 caliber pistol; that his

aptitude tests scores indicated a GCT of approximately 109; and that he had completed high school and a basic cannoneers school, and was qualified for an MOS as a field artillery batteryman (MOS 0811). The appellant then made an unsworn statement in which he asserted that he was 19 years old; that he was the only boy of five siblings in his family; that his father was dead and his mother was unable to work, having a slipped disc in her back; that while an unauthorized absentee he went home and worked to help support his mother and four sisters; that he, in fact, had not graduated from high school but had passed the GED test; that he was a field artillery batteryman; that his father had been in the Army; that he came into the Marine Corps on the urging of his mother; that he respected the Marine Corps because even though he had made a mistake they treated him in a respectful manner and that he had been treated fairly throughout his Marine Corps career; that he had been in pretrial confinement over 2 months; that he knew he broke the law and was sorry for that; that he came from a family of all women and a deceased father, and that his mother spent more time with the girls and never taught him right from wrong; that his grandmother, who had heart trouble, lived next door; that his family had lived on Social Security and his father's VA benefits since his father's death in 1967; that what monies he sends home plus the Social Security and VA benefits are not enough for his family to live on; that he left the Marine Corps to support his family but that he did not think he would have left had he been involved in combat doing the Marine Corps mission; and that he broke the law and was sorry for what he had done to the Marine Corps and the man from whom he had stolen the car.

It is with the above information, the fact that the appellant had pled guilty, and the information contained in the charge that the appellant, who was from the same battery as the victim, had stolen the car on or about 30 March 1979 and had entered an unauthorized absence status on that same date and had remained absent until 25 May 1979, that the military judge was confronted with the weighty task of imposing an appropriate sentence.

We are confident that the military judge was well aware of the significance of awarding a dishonorable discharge as opposed to a bad-conduct discharge, or of not awarding a punitive discharge at all, and of the words of the *Manual for Courts-Martial, 1969 (Rev.)*, paragraphs 127c (4) and 76a (3) and (4), concerning when a bad-conduct discharge is more appropriate than a dishonorable discharge. We note that "dishonorable discharge(s)" should be reserved for those who should be separated for dishonor, after having been convicted of offenses usually recognized by the civil law as felonies, or of offenses of a military nature requiring severe punishment. *Id.* at paragraph 76a (3).

The appellant stole the automobile of his batterymate, who was deployed on an operation, on or about the very day that the batterymate was returning from that deployment in full expectation that his car would be there in order for him to return home to his wife and then be used to get him back and forth to his duties while in garrison. The appellant stole the car in order to return to his home in an unauthorized absence status. Larceny is commonly recognized at common law as a serious felony crime. In the United States military services, the theft of any motor vehicle carries a maximum sentence of a dishonorable discharge and confinement at hard labor for 5 years. Table of Maximum Punishments, Chapter XXV, *Manual for Courts-Martial, 1969 (Rev.)*. Larceny crimes strike at the very heart of society's ability to exist as a community, and this is certainly no less important in a military community. It is commonly recognized that the crime of larceny against a fellow service member takes on even more significance in the military community where the very lives of men at arms often rest upon the complete trust and confidence of their fellow combatants. This trust is emphasized and nurtured in the United States Marine Corps from a Marine's first experiences in bootcamp and throughout his Marine Corps career. Basic to this philosophy is an expectation that your batterymate will not steal from you.

Considering all the circumstances in this case, it can be seen that appellant's conduct deserves to be characterized as "dishonorable". While evidence of family hardship was introduced, we cannot say in this case that such hardship, even when considered along with the other matters introduced as extenuation, is of such a nature to warrant the mitigation of the characterization of the discharge from "dishonorable" to "bad-conduct".

Just prior to sentencing, the military judge clearly put the matter in focus when he remarked, *inter alia*,

Private First Class USRY, in determining what might be an appropriate sentence in your case I have considered, of course, all the matters presented in extenuation and mitigation. And I've particularly considered, first of all, your age, and of course your family situation. And I couldn't help but think of some remarks made by a former well reknowned [sic] Justice of the United States Supreme Court, Oliver Wendell HOLMES, who almost a hundred years ago said that the families of those who commit criminal acts are often the ones most punished by those acts and I'm trying to take that into consideration in your case. He also mentioned in this same article or remarks that what we should strive for in the law is some form of predictability. And I feel it important to impress upon you the seriousness of the criminal acts that you have committed, and so that you may be impressed and so that the crime itself cannot be depreciated, I am determined to sentence you accordingly.

(R. 35).

■ While it is recognized that sentencing is not an exact science and that we should strive for uniformity in sentencing, I am equally convinced that in the appellate process we should not disturb the sense of justice of the community where the crime was committed unless the harshness of the sentence is so disproportionate as to cry out for sentence equalization.

To carry out sentence equalization to its logical extension, when mitigation of the sentence is the only solution, is to hoist society by its own petard; or put more simply, once sentence equalization becomes foremost in reviewing sentences, the minimum sentence awarded becomes the standard. I do not view our role as sentence equalizers, but rather as one to review sentences utilizing the general objectives of sentence review as set out in the *Standards Relating to Appellate Review of Sentence*, ABA Project On Minimum Standards of Criminal Justice, 1967.

■ The general objectives of sentence review are:

(i) to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;

(ii) to facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;

(iii) to promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and,

(iv) to promote the development and application of criteria for sentencing which are both rational and just.

■ The military judge awarded a sentence which fell exactly within the terms of the pretrial agreement. The convening authority approved the sentence as awarded to include the dishonorable discharge. The appellant with advice of counsel entered into a pretrial agreement for the sentence eventually awarded by the military judge. We, like those involved in the pretrial negotiations, the sentencing process at trial, and upon prior review (the accused, the military judge and the convening authority), are convinced that the sentence is appropriate. In the instant case, the crime of larceny standing alone, without resort to consideration of the unauthorized absence offense, is properly characterized for discharge purposes as "dishonorable"; the remainder of the sentence is appropriate. Certainly, considering the totality of the circumstances,

to include absence of evidence of unfairness of the sentence, the sentence is not disproportionate, nor is there evidence of abuse of the sentencing power, so as to cry out for an effort at sentence equalization. We find that throughout the sentencing process and its prior review due consideration was given to the nature of the offenses, the character of the offender, and the protection of the public interest.

We have concluded that the findings and sentence are correct in law and fact and that no error materially prejudical to the substantial rights of the appellant was committed. Accordingly, the findings and sentence as approved on review below are affirmed.

Senior Judge GREGORY concurs.

GLADIS, Judge (concurring/dissenting):

I join the majority in affirming the findings of guilty but dissent from their affirmance of the sentence, because the approved sentence is both unduly severe and inconsistent with the sentences affirmed in similar cases. Cf. United States v. Flint, 50 C.M.R. 865, 870 (A.C.M.R.1975), aff'd, 1 M.J. 428 (CMA 1976) (Congress intended that the military appellate courts strive for uniformity of sentencing.)

The accused was convicted pursuant to his guilty pleas at a general court-martial bench trial of unauthorized absence for 56 days and larceny of a 1976 Chevrolet Nova, in violation of Articles 86 and 121, Uniform Code of Military Justice (UCMJ), and sentenced to a dishonorable discharge, confinement at hard labor for 2 years, total forfeitures, and reduction to pay grade E–1.[1] The convening authority approved the sentence adjudged.

On the basis of the entire record, I find that the approved sentence is inappropriately severe. This Court may affirm only such part of the sentence as it finds correct in law and fact, and determines, on the basis of the entire record, should be approved.

Article 66(c), UCMJ. It should not approve any sentence which, in view of the entire record, it concludes is not fair and just. United States v. Cavallaro, 3 U.S.C.M.A. 653, 14 C.M.R. 71 (1954). The criterion is not legality alone, but legality limited by appropriateness. United States v. Atkins, 8 U.S.C.M.A. 77, 23 C.M.R. 301 (1957). This Court can, in the interest of justice, substantially lessen the rigor of a legal sentence. United States v. Lanford, 6 U.S.C. M.A. 371, 378, 20 C.M.R. 87, 94 (1955). If one prefers to call its mitigation of a legal sentence the exercise of the judicial function of determining legal appropriateness, the description is proper. On the other hand, if one wishes to call it clemency, that description is also proper. The title applied to the power matters little, so long as it is understood that the law invests this Court with the power to treat an accused with less rigor than its authority permits. Id. at 378, 379, 20 C.M.R. at 94, 95. We are not limited to a review of the action of the convening authority for an abuse of discretion. We have the statutory duty to make an independent determination that the sentence is correct in law and fact.

Although the approved sentence is legal, I do not find it to be appropriate. Nothing in the record warrants the harsh sentence approved. The severity of a dishonorable discharge is well-recognized. Such a discharge should be reserved for those who deserve to be separated under conditions of dishonor after commission of the most serious crimes. United States v. Fulton, No. 78 1501 (MCMR 18 January 1979) (unpublished); United States v. Johnson, No. 77 0969 (NCMR 17 June 1977) (unpublished). Although larceny from a fellow member of an accused's unit is serious, it does not of necessity warrant a dishonorable discharge. The confinement approved in this case is unduly severe and far exceeds that affirmed in similar cases. It should, therefore, be reduced. See United States v. Flint, supra; United States v. McIntyre, No. 79 1182 (NCMR 16 November 1979)

---

1. Recommending that confinement be reduced to 18 months, the military judge endorsed a post-trial clemency request, on the basis of the

accused's improvement in post-trial confinement and demonstration of some potential for rehabilitation.

(unpublished) (severe sentence reduced in the interest of sentence equalization).

I do not suggest that, in the interest of sentence equalization, we reduce the sentence to the minimum approved in similar cases, but merely that we reduce an excessive sentence to an appropriate one. The expectations of the community and the goal of specific deterrence, indeed, the general objectives of sentence review set forth in the ABA STANDARDS RELATING TO APPELLATE REVIEW OF SENTENCE, can be adequately served by a less harsh sentence than that approved here. The military judge implicitly recognized that a lesser sentence would serve the expectations of the community and the need for specific deterrence when he announced after imposing sentence that, should the accused demonstrate amenability to rehabilitation and even restoration to duty, he would consider recommending further clemency and when he subsequently recommended reduction of the confinement to 18 months.

Accordingly, I dissent from the majority's affirmance of the sentence. I would approve only so much of the sentence as provides for a bad-conduct discharge, confinement at hard labor for 12 months, total forfeitures for 10 months, and reduction to pay grade E–1.