UNITED STATES

v.

Douglas A. AIKENS, 261 21 7133, Sergeant (E–5), U.S. Marine Corps.

NMCM 82 1562.

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 20 Nov. 1981.

Decided 24 May 1983.

LCDR Richard K. Delmar, JAGC, USNR, Appellate Defense Counsel.

LT John M. Feagan, JAGC, USNR, Appellate Defense Counsel.

William C. Halsey, Individual Defense Counsel.

LT Ronald S. Wasilenko, JAGC, USNR, Appellate Government Counsel.

Before SANDERS, Senior Judge, and MAY and CASSEL, JJ.

SANDERS, Senior Judge:

Tried by a general court-martial with members appellant was convicted of stealing various sums of money from three Marine privates on 16 April 1980; unlawfully entering a Naval Investigative Service (NIS) office with intent to commit larceny, willfully destroying a window and damaging a government filing cabinet, stealing NIS case files and attempting to impede an NIS investigation, all on 7 May 1980; twice unlawfully absenting himself, 2 June until 7 June 1980 and 11 June 1980 until 30 July 1981; and escaping from custody on 11 June 1980. His sentence to confinement at hard labor for five years, total forfeitures, reduction to pay grade E–1 and a dishonorable discharge was approved by the convening authority.

Appellant has assigned the following errors which we have renumbered and slightly rephrased for clarity:

I

THE MILITARY JUDGE ERRED IN ADMITTING INTO EVIDENCE THE TESTIMONY OF SPECIAL AGENT C. RENO CONCERNING ADMISSIONS BY APPELLANT SINCE APPELLANT'S RIGHTS UNDER MILITARY RULES OF EVIDENCE 305(e) HAD BEEN VIOLATED DURING A PRE-POLYGRAPH INTERVIEW.

█ Rule 305(e), Mil.R.Evid. provides: "When a person subject to the Uniform Code of Military Justice who is required to give warnings ... intends to question an accused or person suspected of an offense and knows or reasonably should know that counsel either has been appointed for or retained by the accused or suspect with respect to that offense, the counsel must be notified of the intended interrogation and given a reasonable time in which to attend before the interrogation may proceed."

On or about 1 October 1981 appellant's counsel sent a memorandum to the local office of the Naval Investigative Service requesting an exculpatory polygraph examination for his client. Unfortunately, this memorandum was not introduced at trial and its contents only briefly alluded to. Subsequently, during the week of 12 October 1981, but before Thursday, 15 October, defense counsel and Mr. Gutshall, Special Agent in Charge of the office discussed the manner in which the examination would be conducted.[1] Mr. Gutshall explained to counsel that a preliminary interview would have to take place before the actual polygraph examination so that the interviewer would know what appellant intended to deny. He further stated that he would like the interview to take place the next day or soon thereafter and asked if defense counsel desired to be present during the interview. Defense counsel said that he did not wish to be present, and asked Mr. Gutshall to make arrangements for getting appellant to the interview and told the agent that appellant had admitted going into the NIS office but denied stealing documents or case files.

Without defense counsel having been contacted further in the matter, appellant was interviewed on 15 October 1981 by Special Agent Reno who had been briefed by Mr. Gutshall. Mr. Reno informed appellant that he understood that appellant was being interviewed at his counsel's request and appellant concurred. Appellant was further told that he was suspected of burglary, larceny, and breaking and entering, and advised of his Article 31(b), UCMJ, 10 U.S.C. § 831(b), rights, his right to have counsel present and his right to terminate the interview. Appellant then stated that he did not desire to avail himself of any of these rights and made an oral unsworn statement in which he said that he had crawled through a broken window of the NIS office to recover $516.00 which had been seized from him after the larcenies from the Marines, that he searched Mr. Reno's desk and an unsecured file cabinet, and that having found no money he left by a door. Appellant also indicated that at the

---

1. We note that Monday, 12 October 1981, was a federal holiday so we assume the conversation took place on Tuesday or Wednesday, more probably the former.

time of the 16 April 1980 larcenies he was watching a basketball game with friends.

With these facts in mind we cannot agree with appellant that Rule 305(e) was violated when Mr. Reno failed to personally inform counsel of his intent to interview appellant.

■ The purpose of the rule is to assure that when an interrogator knows that a suspect has counsel, he may not question the suspect without affording the counsel a reasonable opportunity to be present at the interview. *United States v. McOmber*, 1 M.J. 380 (C.M.A.1976). Neither the rule itself nor common sense requires that the suspect's counsel learn of the proposed interview from the person actually conducting the interview provided counsel is otherwise aware of the plan. Similarly, where defense counsel first proposes the interview himself, understands that it is to take place as soon as possible and affirmatively states that he does not want to be present at the interview, in our opinion it would raise form over substance to require, when in fact the interview does take place not more than two days later, that NIS further contact counsel before questioning the suspect.

■ Assuming that appellant's counsel did not ask NIS to examine his client concerning the April 1980 larcenies, we nevertheless find it unnecessary to determine if appellant's comments to Mr. Reno concerning the earlier offenses were inadmissible. Appellant, from the day of the offenses through the day of his trial, consistently denied being guilty of these offenses so the admission of his statement reaffirming this position could hardly be prejudicial to his interests.

## II

THE MILITARY JUDGE ERRED IN ADMITTING INTO EVIDENCE THE TESTIMONY OF SPECIAL AGENT RENO CONCERNING ADMISSIONS BY APPELLANT SINCE APPELLANT'S RIGHTS UNDER MILITARY RULES OF EVIDENCE 305(f) HAD BEEN VIOLATED DURING A PRE–POLYGRAPH INTERVIEW.

■ Rule 305(f), MRE, provides that "[i]f a person chooses to exercise the privilege

against self-incrimination or the right to counsel under this rule, questioning him must cease immediately." In our opinion this rule was not violated in this case.

Mr. Reno testified that he informed appellant of his various rights, including the right to counsel and the right to terminate the interview, a fact conceded by appellant, and that appellant did not avail himself of either option. This testimony is not at variance with that of appellant who stated that he told the agent, "I don't want to answer no questions that might incriminate me because my lawyer's not here." Questions are never incriminating, answers are. Therefore, the plain meaning of appellant's declaration is that, on a question by question basis, he will decide what to answer and what not to answer. This interpretation is consistent with the contents of appellant's replies to Mr. Reno for, other than an admission to what at most was a simple trespass, appellant's answers were exculpatory.

## III

THE MILITARY JUDGE ERRED WHEN HE DENIED THE DEFENSE CHALLENGES FOR CAUSE OF COURT MEMBERS LIEUTENANT COLONEL PARKER AND CAPTAIN MACK.

■ Lieutenant Colonel Parker, as an executive officer and acting commanding officer for several months, had dealt with the local NIS office on almost a daily basis and had found Agents Deahl and Reno, witnesses for the prosecution, professionally competent. However, he indicated on *voir dire* that he could be "neutral" in weighing their testimony and would judge their credibility based solely on matters brought out in the courtroom. Captain Mack as a battery commander had had limited dealings with Agent Deahl. The captain believed that Mr. Deahl would not be an agent if he were not highly credible and trustworthy but he indicated that, everything else being equal, he would not give more weight to the testi-

mony of an NIS agent than he would to that of any other witness.

On the basis of this information the military judge denied appellant's challenges for cause of these officers. We do not believe the judge abused his discretion in so ruling.

 An accused is not entitled to be tried by court members who have had no favorable experiences with the police nor even by members who have not found the police competent, trustworthy and truthful. What an accused is entitled to are members who do not automatically presume that all police (or a particular policeman) are more truthful than some other class of witnesses merely because of their position. *Compare United States v. Tomchek,* 4 M.J. 66 (C.M. A.1977); *United States v. Ryan,* 21 U.S.C. M.A. 9, 44 C.M.R. 63 (1971).

Court members Parker and Mack unequivocally stated that they would decide the issues solely on what they saw and heard in court and nothing of record similar to that found in *United States v. Harris,* 13 M.J. 288 (C.M.A.1982), rebut their declaration of neutrality. We are convinced that they were mentally free to render an impartial finding and sentence based on the law and the evidence. *United States v. McQueen,* 7 M.J. 281 (C.M.A.1979); *United States v. Parker,* 6 U.S.C.M.A. 274, 19 C.M.R. 400 (1955).

IV

PREJUDICIAL ERROR OCCURRED WHEN THE COURT MEMBERS AWARDED A SENTENCE, INTER ALIA, OF DISHONORABLE DISCHARGE, CONFINEMENT AT HARD LABOR FOR FIVE YEARS AND TOTAL FORFEITURES SINCE SAID SENTENCING WAS INAPPROPRIATELY SEVERE IN LIGHT OF ALL THE FACTS AND CIRCUMSTANCES OF THE CASE. UNITED STATES V. USRY, 9 M.J. 701 (N.C.M. R.1980).

Taking advantage of his position as sergeant of the guard and the naivete of his victims, appellant stole substantial sums of money from three junior Marines and later stole his case file from the NIS to cover his tracks. Without even considering his other offenses appellant's sentence was entirely appropriate.

Accordingly, the findings of guilty and the sentence as approved on review below are affirmed.

Judge MAY and Judge CASSEL concur.