**UNITED STATES**

v.

**Jeffrey B. MAZER, Lieutenant (O–3), Dental Corps, U.S. Naval Reserve.**

**NMCM 200001655.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 15 March 1999.

Decided 9 May 2003.

LT Travis J. Owens, JAGC, USNR, Appellate Defense Counsel.

LT Lars C. Johnson, JAGC, USNR, Appellate Government Counsel.

Before OLIVER, Chief Judge, VILLEMEZ, and HARRIS, Appellate Military Judges.

HARRIS, Judge:

Appellant was tried by a general court-martial composed of a military judge alone. Pursuant to his pleas, Appellant was convicted of electronically transmitting obscene material via computer, communicating sexually suggestive and sexually explicit language to a minor via electronic mail, engaging in telephone conversations of a sexually suggestive and sexually explicit nature with a minor, possessing obscene, lewd, and lascivious visual depictions of minors, indecent acts with a minor, and communicating indecent language, in violation of Articles 133 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 933 and 934. On 15 March 1999, Appellant was sentenced to confinement for a period of 7 years, forfeiture of all pay and allowances, and a dismissal from the Naval Service. On 15 March 2000, the convening authority (CA) approved the sentence as adjudged and, except for the dismissal, ordered it executed. Pursuant to a pretrial agreement, the CA suspended all confinement in excess of 60 months for a period of 12 months from the date of his action. The CA further disapproved 1/3 of Appellant's adjudged forfeitures upon his release from confinement.[1]

After carefully considering the record of trial, Appellant's seven assignments of error,

---

1. The CA's action conforms with RULE FOR COURTS-MARTIAL 1107(d)(2), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.), Discussion, and *United States v. Warner*, 25 M.J. 64, 67 (C.M.A.1987), which suggest that forfeitures should not exceed 2/3 pay while a service member convicted at a court-martial is no longer serving confinement.

and the Government's response, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of Appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Statement of Facts

Appellant was commissioned in the United States Naval Reserve on 12 October 1995, and commenced his active duty obligation on 3 March 1996. Prosecution Exhibit 1 at 1. At the time of his offenses, Appellant was assigned to 1st Dental Battalion, 1st Force Service Support Group, Marine Forces Pacific, Camp Pendleton, California. *Id.*

In the summer of 1997, Appellant made contact over the Internet with a person he knew to be a 12–year–old female named SH. Specifically, Appellant met SH in an electronic "chat room." *Id.* at 8. Appellant provided SH with his phone number and asked her to call him collect, which she did. During one of their conversations, SH agreed to meet Appellant in person. Appellant traveled to Irvine, California, where he met SH at her apartment complex pool. During this meeting, Appellant kissed SH on the mouth.

Approximately two weeks later, Appellant returned to Irvine to meet SH again. This meeting took place at a park near SH's apartment complex. During this meeting, Appellant kissed SH, rubbed her breasts, and touched her vaginal area. SH informed Appellant that she did not want to see him again, and Appellant had no further contact with SH until after he returned from deployment in August of 1998. In September of 1998, Appellant contacted SH again over the Internet. Appellant indicated he was interested in rekindling his relationship with SH, and that he wanted to lose his virginity with her.

Meanwhile, during this same time period, Appellant made contact with a person he knew to be a 14–year–old female high school freshman named HR, whose father was a Marine Gunnery Sergeant (GySgt) also serving at Camp Pendleton, CA. Over the course of several weeks, Appellant and HR engaged in numerous conversations both over the Internet and on the telephone. Appellant informed HR that he was a dentist in the United States Navy, sent her a photograph of himself over the Internet, gave her his phone number, and asked her to call him. During one particular phone conversation, HR informed Appellant that she was having a birthday party at her apartment in Oceanside, California, and asked Appellant to bring some alcoholic beverages for her and her friends.

On 25 September 1998, Appellant went to the apartment of HR's parents, where HR and several other teenagers were hanging out. They all knew that Appellant was in the U.S. Navy. Appellant provided several of the teenagers with alcohol. At one point, HR and Appellant went for a walk, during which Appellant kissed HR and asked her to perform oral sex on him. HR declined Appellant's request and eventually Appellant left the party.

During the days following the party, Appellant attempted to continue his communication with HR. However, by this time, the Naval Criminal Investigative Service (NCIS) had been notified of Appellant's conduct. Special Agent Jodi Diaz, NCIS, was tasked to assume the identity of HR as Appellant continued to send electronic messages over the Internet. In one such e-mail sent by Appellant on 25 October 1998, Appellant commented on the "horniness" of one of HR's friends, indicating he wanted to "try her out," and that another of HR's friends needed "to relax and get laid." Prosecution Exhibit 1 at 2. In other e-mails, Appellant talked about engaging in sexual acts with HR, asking her if she had any younger friends, and remarking that he has a "fantasy of being with a bunch of young girls all at once." *Id.* at 4. Appellant also expressed a desire to watch a pornographic movie with HR. At one point, Appellant stated that he really wanted to try "it" with a girl who hadn't had her period yet. *Id.* Appellant even told HR that he wanted to have sexual intercourse with an 11–year–old. During one e-mail exchange, Appellant sent a photograph of himself partially naked, displaying an erect penis.

Appellant later learned that he had been communicating with Special Agent Diaz, who was posing as HR. When NCIS agents went to Appellant's apartment on 30 October 1998, they seized Appellant's computer on which they found hundreds of images depicting minors engaged in sexually explicit poses and acts. Appellant had obtained the images over the Internet.

## Unreasonable Multiplication of Charges

In Appellant's first assignment of error, he asserts that Charge I, Specifications 4–7,[2] are an unreasonable multiplication of charges (UMC) in that they misrepresent one series of electronic "chats" between Appellant and an undercover NCIS agent as four separate criminal acts. Appellant avers that this Court should consolidate Specifications 4 through 7 of Charge I and reassess the sentence, reducing Appellant's confinement by 6 months. We disagree.

The doctrine of UMC is designed to address the potential for an abuse of discretion in charging an accused based on the same act or transaction. *See United States v. Quiroz,* 55 M.J. 334, 338 (2001)(referring to this Court's "framework for determining whether a given multiplication of charges arising from the same *act or transaction*" is unreasonable)(emphasis added); *see also* R.C.M. 307(c)(4), Discussion (stating "[w]hat is substantially one transaction should not be made the basis for an [UMC] against one person."). Here, Appellant fails to demonstrate the conduct underlying Specifications 4 through 7 of Charge I constitutes the same act or transaction. Each identified specification represents a discrete and unique communication in that all but one occurred on a separate date from the others, they all occurred at separate times, and the content of each communication was distinct. Charge Sheet. Thus, UMC simply does not apply. In any event, Appel-

lant has not shown–an abuse of discretion,[3] or otherwise articulated why any relief should focus on either sentencing or findings.[4] Accordingly, we decline to grant relief.

## Ineffective Assistance of Counsel

In Appellant's second assignment of error, he asserts that the trial attorneys assigned and hired to represent him were ineffective for failing to request deferment of forfeitures. Appellant avers that this Court should order a new CA's action with an order to the CA to defer all forfeitures. In the alternative, Appellant requests that we return the record to the CA for creation of a supplemental CA's action with the opportunity for Appellant to request deferment of forfeitures. We disagree.

The Sixth Amendment of the United States Constitution and Article 27, UCMJ, 10 U.S.C. § 827, guarantee an accused the right to the effective assistance of counsel. *See McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *see also United States v. Ingham,* 42 M.J. 218, 223 (1995). This right to competent counsel extends through the post-trial phase of the court-martial process. *See United States v. Cornett,* 47 M.J. 128, 133 (1997). However, because the competency of counsel is presumed, an appellant "must surmount a very high hurdle" to establish ineffective assistance of counsel (IAC). *United States v. Moulton,* 47 M.J. 227, 229 (1997). To prevail, Appellant must demonstrate: (1) his counsel was deficient; and (2) he was prejudiced by such deficient performance. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Assistance of counsel is deficient when counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* A claim attacking the competency of counsel is

---

2. Charge I alleges violations of Article 133, UCMJ, conduct unbecoming an officer and gentlemen, in that Specifications 4–7 each separately allege that "while participating in discussions in a computer [(Internet)] chat room," Appellant did communicate to a special agent of NCIS "whom [he] then believed to be [HR], a 14 year old female, sexually suggestive and sexually explicit [(indecent)] language[.]" Charge Sheet.

3. Discretion as viewed in the context of the unique aspects of the military justice system. *Quiroz,* 55 M.J. at 338.

4. *Quiroz,* 55 M.J. at 339 (holding that multiplicity for sentencing remains an appropriate claim for relief when the "nature of the harm requires a remedy that focuses *more appropriately* on the punishment than on the findings.")(emphasis added).

reviewed *de novo.* *United States v. Garcia,* 57 M.J. 716, 721 (N.M.Ct.Crim.App.2002).

Appellant asserts that his civilian defense counsel failed to provide competent assistance when counsel neglected to seek the deferment of forfeitures from the CA. Appellant's Brief of 25 Jun 2002 at 11. Appellant claims his civilian defense counsel was on "specific notice" of his need for forfeiture protection and that counsel "inexplicably allowed forfeitures to take effect without making an effort to convince the [CA] to defer the forfeitures." *Id.* at 11–12.

As an initial matter, Appellant mischaracterizes the post-trial clemency matters submitted to the CA on his behalf. In fact, civilian defense counsel did raise the issue of Appellant's financial situation in his clemency submissions. Specifically, civilian defense counsel offered two letters appended as enclosures to the clemency request that directly addressed Appellant's financial concerns. Clemency Request of 20 Sep 1999, Enclosures 1 and 2.

First, Appellant fails to demonstrate his civilian defense counsel's post-trial representation was unreasonable under the circumstances. *See Strickland,* 466 U.S. at 690, 104 S.Ct. 2052 (stating that a "court deciding an actual ineffectiveness claim must judge the reasonableness of [defense] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."). Although Appellant's civilian defense counsel did not submit a request for deferral of forfeitures, he did offer significant material in support of his post-trial clemency request including letters from family, friends, and other active-duty service members, as well as brochures and program information for certain treatment opportunities available to Appellant. Clemency Request of 20 Sep 1999; Response to Staff Judge Advocate's Recommendation of 31 Jan 2000. Notwithstanding those efforts, Appellant now suggests that his civilian defense counsel was required, as a matter of law, to request a specific *type* of clemency. Appellant's only basis for this claim is his assertion that there

was information available to civilian defense counsel indicating that "[f]orfeiture protection would have allowed Appellant to pay [his] debts without raiding his elderly parents' retirement fund." Appellant's Brief of 25 Jun 2002 at 10–11. However, Appellant fails to show this "information" left his civilian defense counsel with only one reasonable option in pursuing clemency.

Second, Appellant does not claim he specifically asked his civilian defense counsel to request the deferment of forfeitures, only to be denied that assistance. Appellant also does not allege that his civilian defense counsel failed to explain the post-trial clemency process, or otherwise excluded Appellant from taking part in the post-trial process. Instead, Appellant implies that his civilian defense counsel should have read the writing on the wall and sought one very specific type of clemency relief. In making his claim, Appellant ignores our superior Court's guidance that appellate courts generally will not second-guess tactical or strategic decisions. *See United States v. Rivas,* 3 M.J. 282, 289 (C.M.A.1977). Civilian defense counsel's decision to seek a significant reduction in confinement represented a classic tactical decision. While seeking a deferral of forfeitures was one possible option, given the significant confinement adjudged, civilian defense counsel's decision to focus on reducing confinement was a sound strategy. Consistent with Appellant's financial concerns, civilian defense counsel recognized the obvious—the sooner Appellant was released from confinement, the sooner he could secure income-generating employment.[5]

However, even assuming civilian defense counsel's post-trial representation was deficient, Appellant still fails to demonstrate prejudice. During his unsworn statement before the court, Appellant repeatedly alluded to his and his family's financial concerns. In addition, Appellant's mother testified regarding the potential financial impact of this court-martial on both Appellant and his family. Also, as noted above, Appellant's civilian defense counsel submitted letters for the

---

5. The CA would only have been able to protect Appellant from automatic forfeitures up to his action by way of deferment, given that a waiver

was not an option since Appellant has no dependents. *See* Art. 58b, UCMJ, 10 U.S.C. § 858b.

CA's consideration that referenced Appellant's bleak financial situation. Clemency Request of 20 Sep 1999, Enclosures 1 and 2. The record indicates that before taking his action, the CA reviewed Appellant's clemency submissions, as well as the record of trial. CA's Action of 15 Mar 2000. Thus, the issue was plainly raised for the CA's consideration. The CA's decision to disapprove 1/3 of Appellant's forfeitures upon his release from confinement indicates an awareness of the issue. *Id.* Appellant has not shown a "reasonable likelihood" the CA would have granted a deferment of forfeitures had such a request been made. *United States v. Key*, 57 M.J. 246, 249 (2002). Accordingly, we decline to grant relief.

### Insufficient Providence Inquiry

In Appellant's third assignment of error, he asserts that since he pled guilty based upon an unconstitutional "child pornography" definition (18 U.S.C. § 2256(8)(B)) in the Child Pornography Prevention Act (CPPA) of 1996, his plea to Charge I, Specification 9, was improvident. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002). Appellant avers that this Court should dismiss Charge I, Specification 9, and reassess the sentence. We disagree.

■ For a military judge to accept an accused's guilty plea, the providence inquiry must indicate that the accused believes he/she is guilty and that the factual circumstances, as revealed by the accused, objectively support the plea. *United States v. Higgins*, 40 M.J. 67, 68 (C.M.A.1994)(citing *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980)); *see also* R.C.M. 910(e). However, a military judge is not required "to embark on a mindless fishing expedition to ferret out or negate all possible defenses or potential inconsistencies." *United States v. Jackson*, 23 M.J. 650, 652 (N.M.C.M.R.1986).

■ A military judge's acceptance of a guilty plea will not be set aside absent an abuse of discretion. *See United States v. Eberle*, 44 M.J. 374, 375 (1996). To prevail, Appellant must demonstrate a "substantial basis in law and fact for questioning the

guilty plea." *Id.* (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991)). Appellant must "overcome the generally applied waiver of the factual issue of guilt inherent in voluntary pleas of guilty." *United States v. Dawson*, 50 M.J. 599, 601 (N.M.Ct.Crim.App. 1999).

■ Appellant claims that his plea to Specification 9 of Charge I was improvident in that the identified charge incorporated the CPPA, which was partially struck down by the Supreme Court in *Free Speech Coalition*. Appellant's Brief of 25 Jun 2002 at 13. We disagree.

First, contrary to Appellant's assertion, he was not convicted under the CPPA. The pertinent specification was plead under Article 133, UCMJ, alleging:

> In that Lieutenant Jeffrey B. Mazer, U.S. Naval Reserve, on active duty, did, at or near Carlsbad, CA, on or about 30 October 1998, wrongfully and dishonorably possess obscene, lewd, and lascivious visual depictions of minors, such possession constituting conduct unbecoming an officer and a gentlemen and to the disgrace of the armed forces.

Charge Sheet. Nowhere in the specification did the Government aver a violation of the federal child pornography statute cited by Appellant.

To the extent federal child pornography law was referenced at Appellant's court-martial, he misidentifies the pertinent statute. In explaining the elements of the identified offense, the military judge made reference to "federal law contained in Title 18 of the United States Code." Record at 34. Later, when the military judge went over the elements of the charged offense, he referred to 18 U.S.C. § 2252, which codified the Protection of Children Against Sexual Exploitation Act of 1977 ("Protection of Children Act").[6] *Id.* at 49. However, the CPPA, which was at issue in *Free Speech Coalition*, was never discussed. *Id.* Appellant offers no additional support for his claim that he was convicted under the CPPA. The military judge did not review the elements of the CPPA, nor suggest that Appellant had actually been

---

6. *See* Pub.L. No. 95–225, § 2(a), 92 Stat. 7, 7 (1978).

charged under this separate statute. The judge simply stated that Specification 9, Charge I, was "derived from" the relevant federal law. *Id.* In conducting the providence inquiry, the military judge covered only the elements of Article 133, UCMJ. Therefore, Appellant's attempt to transform his conviction under Article 133, UCMJ, into a conviction under the CPPA is not well taken. The only issue before this Court is whether the Supreme Court's ruling in *Free Speech Coalition* somehow invalidated Appellant's conviction under Article 133, UCMJ.

In *Free Speech Coalition,* the Supreme Court addressed a facial challenge to the CPPA.[7] 535 U.S. at 239–40, 122 S.Ct. 1389. Specifically, the Court addressed a challenge to two of the four sections defining "child pornography" under the statute. *Id.* The petitioners in *Free Speech Coalition* challenged language defining child pornography as images in which: (1) the visual depiction is, *or appears to be,* of a minor engaged in sexually explicit conduct; or (2) the visual depiction is advertised, promoted, presented, described, or distributed in such a manner *that conveys the impression* that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct. *Id.* at 246, 122 S.Ct. 1389; *see also* 18 U.S.C. §§ 2256(8)(B) and (8)(D). Finding these provisions prohibited a "substantial amount of protected speech," the Court deemed the challenged language overbroad and unconstitutional. *Free Speech Coalition,* 535 U.S. at 241–42, 122 S.Ct. 1389.[8]

The Court distinguished its prior decision in *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), which upheld a prohibition on depictions of children engaged in sexual conduct. *Free Speech Coalition,* 535 at 249–51, 122 S.Ct. 1389. Writing for the majority, Justice Kennedy noted that "[b]y prohibiting child pornography that does not depict an actual child, the statute [§ 2256(8)(B)] goes beyond *New York v. Ferber* ... which distinguished child pornography from other sexually explicit speech because of the State's interest in protecting the children exploited by the production process." *Id.* at 240, 122 S.Ct. 1389. Thus, despite striking down two overly broad definitions of child pornography under the CPPA, the Court reinforced the prevailing rule that visual depictions of minors engaged in sexually explicit conduct are not protected under the First Amendment.

Appellant's plea to Specification 9 under Charge I (alleging a violation of Article 133, UCMJ, for possessing "obscene, lewd, and lascivious visual depictions of minors") is not invalidated as a result of the Supreme Court's ruling in *Free Speech Coalition.* Appellant's analysis of the impact of *Free Speech Coalition* on his conviction fails on several fronts.[9] First, Appellant mistakenly equates the CPPA with Specification 9. As noted, the challenged specification refers to possession of "obscene, lewd, and lascivious visual depictions of *minors.*" Charge Sheet. The unconstitutional portions of the CPPA, on the other hand, criminalized the possession of any depiction that "appears to be" or "conveys the impression that the material is" an image of a minor engaged in sexually explicit conduct. *See* 18 U.S.C. §§ 2256(8)(B) and (D). In other words, un-

---

7. Traditional rules of constitutional adjudication provide that "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *See Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). However, an exception to this rule has been carved out in cases involving the First Amendment where attacks have been permitted on the ground that the statute at issue prohibits a substantial amount of protected expression. *Id.* at 612, 93 S.Ct. 2908.

8. Overbreadth doctrine has been described alternatively as either providing the accused with

standing to assert a third-party's interests or requiring that the accused be sanctioned by a constitutionally valid rule of law. *See* Richard H. Fallon, Jr., *Making Sense of Overbreadth,* 100 Yale L.J. 853, 867 (1991); *see also* Captain John A. Carr, USAF, *Free Speech in the Military Community: Striking a Balance Between Personal Rights and Military Necessity,* 45 A.F. L.Rev. 303, 318 (1998).

9. It is not clear whether Appellant has raised a facial challenge to his conviction under Article 133, UCMJ, or whether his attack is limited to the specification as applied to his particular conduct. Under either theory, Appellant's challenge is not well taken.

like Specification 9, the CPPA criminalized visual depictions that did not involve actual minors engaged in sexual conduct. As such, the CPPA contained constitutional infirmities not present in the subject charge.

The pertinent specification targeted the possession of "obscene, lewd, and lascivious" depictions of minors. Charge Sheet. The term "lewd" was defined as "preoccupied with sex." Record at 34. The term "lascivious" was defined as "marked by lust or exciting sexual desires." *Id.* at 33–34. Thus, the "speech" alleged in Specification 9 clearly fell under the category of unprotected speech identified as obscene in *Ferber.* As such, Appellant (or any other individual) simply did not have the "right" to possess that type of material.

Also, unlike the CPPA which targeted certain images based on specific content, Article 133, UCMJ, is limited to the possession of images constituting "conduct unbecoming an officer" and "to the disgrace of the armed forces." As such, the statute is much more narrow in scope than the CPPA. Therefore, even if the first element under Specification 9 was not pled precisely enough to fall squarely within the category of speech identified as unprotected in *Ferber,* given that this is a military offense, and that the second element narrows the category of speech covered, the specification was clearly not overbroad.

To the extent that Appellant makes an "as applied" challenge to his conviction, his effort is not well taken. Appellant admitted he possessed depictions of minors under the age of 16, engaged in sexual activity. Record at 48; Prosecution Exhibit 1 at 7–8. Appellant further admitted his actions disgraced and dishonored himself "to the extent that they seriously compromised his standing as an officer," and furthermore, constituted "conduct unbecoming an officer and a gentleman." Record at 49; Prosecution Exhibit 1 at 8. Our review of the images confiscated from Appellant confirms the constitutionally proscribed nature of the visual depictions at issue. Prosecution Exhibits 11–16. There can be no doubt that the Government was permitted to impose criminal sanctions for this type of conduct.

*Free Speech Coalition* did not render invalid the entirety of the Protection of Children Act and the CPPA. Rather, that decision only rendered constitutionally infirm those sections that prohibited involvement with visual depictions which *appear to be* of a minor engaging in sexually explicit conduct, or *conveys the impression* that the material is or contains visual depictions of a minor engaging in sexually explicit conduct. In effect, "virtual" or "morphed" images not representing actual children. The Supreme Court left intact those provisions addressing images of actual children.

We have examined the exhibits and have no doubt that they depict actual children, *i.e.,* minors, as defined above by statute. Further, Appellant acknowledged, in fact, that the exhibits actually depicted minor children. Record at 28–30, 33–34, 47–49; Prosecution Exhibit I at 7–8.

One can hardly imagine actions that might pose a greater threat to an officer's own honor or standing, than the possession of obscene, lewd, and lascivious visual depictions of minors. The fact that Appellant was regularly downloading images of female minors being sexually abused created a significant risk that his stature as an officer would be greatly diminished. That his conduct was private in nature is of no import. *See United States v. Norvell,* 26 M.J. 477, 478 (C.M.A.1988)(stating that "[c]onduct which is entirely unsuited to the status of an officer and gentleman often occurs under circumstances where secrecy is intended."). Accordingly, we decline to grant relief.

### Improvident Plea

In Appellant's fourth assignment of error, he asserts that the military judge erred by accepting his plea to communicating sexual language via e-mail to HR, a 14–year-old girl (Charge I, Specification 3), where the facts elicited failed to establish HR received the e-mail. Appellant avers that this Court should dismiss Charge I, Specification 3, and reassess the sentence. We disagree.

Appellant's challenge to his plea under Specification 3 is unpersuasive. To confirm that Appellant communicated with the victim, the military judge engaged Appellant in the following colloquy:

MJ: After this party, you went home and you got on the computer and talked with her?

ACC: Yes, sir, I believe so, that this was an e-mail that I sent to her. I don't recall if we had any direct conversation.

MJ: Okay. So it wasn't an instant chat?

ACC: No, sir. I believe it was e-mail.

MJ: And you're talking in this e-mail about [A]. Is that right?

ACC: Yes, sir.

Record at 40–41. The judge also considered the stipulation of fact in which Appellant stipulated that on the date in question, he and the victim "continued to engage in on-line conversations." Prosecution Exhibit 1 at 3. There was nothing ambiguous or unclear about Appellant's conduct.

Appellant now attempts to distance himself from the plain meaning of the language used in Specification 3, as well as his own in-court admissions. However, this Court rejects Appellant's invitation to speculate concerning allegations that were never raised below and that directly contradict the otherwise unequivocal record. *See United States v. Johnson,* 42 M.J. 443, 445 (1995)(noting that appellate courts do not engage in post-trial speculation concerning facts that might invalidate an accused's plea, particularly when such speculation contradicts the express admissions by the accused on the record).

Assuming the record leaves open the possibility that the e-mails in question were never actually received by the victim, Appellant still fails to demonstrate this possibility renders his plea improvident. Appellant's attempt to make a direct comparison to Article 134, UCMJ, is misguided. While actual knowledge of the communication at issue may be required to convict a service member for communicating indecent language under Article 134, UCMJ (as indicated in the instructions set forth in the Military Judge's Benchbook), the same is not necessarily true with regard to the Article 133, UCMJ, specification at issue in this case. The elements under Article 133, UCMJ, are: (1) that the accused did or omitted to do certain acts; and (2) that, under the circumstances, these acts or omissions constituted conduct unbecoming an officer and a gentlemen. The fact that the intended victim may not have received Appellant's message does not diminish the "unbecoming" nature of his conduct. In other words, Appellant's admissions and the record clearly establish the two basic elements of Article 133, UCMJ, even if they may not be sufficient to support an indecent language charge as defined under Article 134, UCMJ. Accordingly, we decline to grant relief.

### Improper Sentencing Evidence

In Appellant's fifth assignment of error, he asserts that the father of the victim requesting that the military judge award the "maximum punishment" prejudiced him. Appellant avers that this Court should reassess the sentence absent the error and disapprove either the dismissal or 6 months confinement. We disagree.

■ Issues concerning the admissibility of evidence are forfeited if not raised at trial. *United States v. Gilley,* 56 M.J. 113, 122 (2001). Thus, where, as in this case, the issue was not raised below, Appellant will not be entitled to relief on appeal absent plain error. *Id.; see also* R.C.M. 103(a)(providing that error may not be predicated on the admission of evidence, unless there was an objection at trial and the admission of evidence materially prejudices a substantial right of a party). To meet this standard, Appellant must show that: (1) the admission of certain evidence was error; (2) that such error was plain; and, (3) that the error materially prejudiced Appellant's substantial rights. *United States v. Chapa,* 57 M.J. 140, 143 (2002)(citing *United States v. Powell,* 49 M.J. 460, 463–64 (1998)).

■ Appellant claims the military judge committed prejudicial error by admitting the testimony of GySgt RR, U.S. Marine Corps, the father of one of the victims, who requested the judge impose the maximum sentence. Appellant's Brief of 25 Jun 2002 at 19. Assuming GySgt RR's testimony was improper, Appellant fails to show the admission of that testimony constituted plain error.

Military judges are presumed to know and apply the law correctly. *See United States v.*

*Williams,* 50 M.J. 397, 400 (1999)(noting that any risk of prejudice by improper sentencing testimony is reduced when the court consists of a military judge alone who presumably knows and applies the correct law.). When GySgt RR made his comments, he was clearly speaking under the influence of the moment. As the father of a young girl who had been sexually victimized by Appellant, GySgt RR's remarks were indicative of his outrage. While his statements may have crossed the boundary of proper opinion testimony, we presume the military judge assessed and gave appropriate weight to that testimony. *See Williams,* 50 M.J. at 400 (where the Court presumed the military judge was aware of the limits on proper sentencing testimony). Unlike the squadron commander's testimony in *United States v. Ohrt,* 28 M.J. 301 (C.M.A.1989), a case on which Appellant heavily relied in his brief, GySgt RR's testimony did not inject a quality of command influence into the proceedings. Rather, his statements simply reflected the personal feelings of a distraught father dealing with the pain caused by Appellant's criminal conduct.

In any event, given the serious nature of Appellant's conduct, there is virtually no chance GySgt RR's testimony with regard to an appropriate sentence altered the outcome of the proceedings. In fact, Appellant received a sentence well below the maximum sentence of 23 and one-half years confinement. Charge Sheet; Record at 27, 169. Under the circumstances, the testimony simply did not rise to the level of plain error. *See United States v. Wilson,* 31 M.J. 91, 94 (C.M.A.1990)(using a euphemism to recommend a punitive discharge was found not to be plain error). Accordingly, we decline to grant relief.

### Sentence Appropriateness

██ In Appellant's sixth assignment of error, he asserts that his sentence to a dismissal and 7 years confinement is inappropriately severe. Appellant avers that this Court should reassess the sentence to include confinement for only 4 years. We disagree.

A court-martial may impose any sentence, including the maximum sentence authorized by law. R.C.M. 1002. An appropriate sentence results from an individualized consideration of the nature and seriousness of the offense and the character of the offender. *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982)(citing *United States v. Mamaluy,* 10 C.M.A. 102, 27 C.M.R. 176, 1959 WL 3587 (1959)). Courts of criminal appeals are tasked with determining sentence appropriateness, as opposed to bestowing clemency, which is the prerogative of the convening authority. *See United States v. Healy,* 26 M.J. 394, 395 (C.M.A.1988); *see also* R.C.M. 1107. Thus, a sentence should not be disturbed on appeal "unless the harshness of the sentence is so disproportionate as to cry out for sentence equalization." *United States v. Usry,* 9 M.J. 701, 704 (N.C.M.R. 1980).

Appellant's sentence is entirely appropriate for a Naval officer who either engaged in or attempted to engage in, indecent conversations and sexually explicit conduct with female minors including the daughter of a fellow service member, and possessed numerous obscene images of minors engaged in sexually explicit conduct. Charge Sheet; Record at 23–54; Prosecution Exhibit 1. There can be no doubt that, although Appellant's conduct was serious, he received individualized consideration based on his conduct and character as revealed in the record. We also note that Appellant benefited from his pretrial agreement, which suspended confinement in excess of 60 months. Accordingly, we decline to grant relief.

### Pretrial Punishment

In Appellant's summary seventh assignment of error, he asserts that he was subjected to pretrial punishment. Appellant avers that this Court should award ten additional days of credit for each of the four days he spent in "prevention of injury" (POI) status and appropriate additional days credit for each day served in "special quarters." We disagree.

██ An accused awaiting trial by court-martial may not be subjected to pretrial punishment. Art. 13, UCMJ, 10 U.S.C. § 813. A violation of this rule occurs when there is intent to punish, or the imposition of restrictions on liberty is so excessive and

unduly rigorous as to constitute punishment. *United States v. McCarthy*, 47 M.J. 162, 165 (1997). When an arbitrary brig policy results in particularly egregious conditions of confinement, the court may infer that an accused has been subject to pretrial punishment. *See Bell v. Wolfish*, 441 U.S. 520, 539, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *see also United States v. Huffman*, 40 M.J. 225, 227 (C.M.A.1994). However, if the conditions of pretrial restraint were reasonably related to a legitimate government objective, an appellant will not be entitled to relief. *See McCarthy*, 47 M.J. at 167; *see also United States v. Sittingbear*, 54 M.J. 737, 741 (N.M.Ct.Crim.App.2001). Appellant bears the burden of establishing pretrial punishment. *United States v. Mosby*, 56 M.J. 309, 310 (2002). This issue is a mixed question of law and fact, requiring "*de novo* review" of whether Appellant was subjected to pretrial punishment. *McCarthy*, 47 M.J. at 165. The military judge's factual findings relative to an intent to punish are reviewed under a clearly erroneous standard of review. *United States v. Smith*, 53 M.J. 168, 170 (2000).

▇▇ In the present case, Appellant raised the issue of illegal pretrial punishment at trial. At the time of trial, Appellant had served 136 days in pretrial confinement in "special quarters" at the Marine Corps Base Brig, Camp Pendleton, of which four days were served under POI designation. Charge Sheet; Record at 64; Appellate Exhibit III at 1, 7. Appellant contends that he was not treated with "the respect due an officer and pretrial detainee[,]" and that the circumstances of his confinement in "special quarters" were so excessive as to constitute punishment even if no intent to punish existed. Appellant's Brief of 25 Jun 2002 at 21.

After considering Appellant's motion, the military judge made detailed findings of fact in which he concluded that there was no intent to punish the accused prior to his court-martial. Appellate Exhibit VI at 6. The military judge considered the nature of the conditions imposed on Appellant, the reasons given for those conditions, as well as the information available to both Appellant's commanding officer at the time of his confinement order, and the initial review officer (IRO) at the time of the review hearing. The military judge determined that the conditions imposed on Appellant served legitimate governmental objectives. Appellate Exhibit VI at 6. The military judge clearly relied on this Court's guidance that courts should not " 'second guess' the administrative custody classification decisions assigned to a prisoner absent compelling reasons to do so." *United States v. Jenkins*, 50 M.J. 577, 583 (N.M.Ct. Crim.App.1999), *aff'd*, 54 M.J. 12 (2000). Since the record and pertinent authority supported the military judge's determination, his findings of fact were not clearly erroneous.

As this Court has previously recognized in *United States v. Pryor*, 57 M.J. 821, 826 (N.M.Ct.Crim.App.2003), current detention facility regulations only require that " '[m]inimum inside dimensions and construction will conform to MIL–HDBK 1037/4 (NOTAL) for *new construction, renovation, or alteration*. Existing cells will be at least 6 feet wide, 8 feet long and 8 feet high.' " (*quoting* Secretary of the Navy Instruction 1640.9B of 2 Dec 1996, Article 12102.4 (emphasis added)). Appellant implies that his cell was "confining," but as this Court previously held, "if it complies with Secretarial instructions it is hardly arbitrary to put him there, and does not qualify as illegal punishment." *Pryor*, 57 M.J. at 826. Further, Appellant does not assert that his cell's inside dimensions and construction do not conform to MIL–HDBK 1037/4 (NOTAL) for new construction, renovation, or alteration. Therefore, following our reasoning in *Pryor*, this Court will not question decisions peculiarly within " 'the province and professional expertise of corrections officials.' " *Id.*, quoting *Pell v. Procunier*, 417 U.S. 817, 827, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).[10]

Appellant has failed to meet his burden by presenting sufficient evidence to justify a claim of illegal pretrial punishment. For these reasons, we decline to grant relief.

10. Prison officials should be "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline." *Bell*, 441 U.S. at 547, 99 S.Ct. 1861.

### Conclusion

Accordingly, we affirm the findings and the sentence, as approved on review below.

Chief Judge OLIVER and Judge VILLEMEZ concur.